# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CARLOS DEGLACE,
       Plaintiff,

v.                                           Civil Action No. 05-2276(CKK)

DRUG ENFORCEMENT
ADMINISTRATION,
       Defendant.
_____/

## PLAINTIFF'S MOTION IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, plaintiff Carlos Deglace, pro se, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, files his opposition to Defendant's Summary Judgment Motion on the grounds, that there are material facts in dispute and that the defendant is not entitled to judgment as a matter of law.

Plaintiff's motion in opposition to defendant's summary judgment is consist of a supportive affidavit and memorandum of law setting forth specific facts showing that there is a genuine issue for trial. See Fed.R.Civ. 56(e)

Dated: _5-18-06_

Respectfully submitted,

Carlos Deglace, pro se
Reg.No. 04228-017/Unit B3
Federal Correctional Complex
Coleman (low)
P.O. Box 2031
Coleman, Florida 33521

RECEIVED

MAY 2 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CARLOS DEGLACE,
     Plaintiff,

v.                                    Civil Action No. 05-2276(CKK)

DRUG ENFORCEMENT
ADMINISTRATION,
     Defendant.
_____/

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF AND
IN OPPOSITION TO DEFENDANT'S SUMMARY JUDGMENT**

COMES NOW, plaintiff Carlos Deglace, files his opposition to Defendant's summary judgment, seeking access to documents as to Steven Ming, which were generated by the Drug Enforcement Administration ("DEA"). In support thereof, plaintiff states the following:

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On August 9, 2004, by letter, plaintiff requested access to records pertaining to DEA's informant, Steven Francis Ming. See (Plaintiff's Compl. p 2, Exh.A) Plaintiff specifically listed: Ming's criminal history, cases where Ming has testified, instances where the DEA has intervened on Ming's behalf, and sanctions that where imposed on Ming by the DEA as documents he sought for disclosure. See Id.

On August 20, 2004, by letter, the DEA acknowledged the receipt of plaintiff's request but refused to process it. See (Plaint'ff's Compl. p 2, Exh. B) Because plaintiff failed to provide the DEA with a privacy waiver or proof of Ming's death, the agency neither confirms nor denied the existence of any the requested records. See Id. The DEA also explained that "[w]ithout proof of death or an original notarized authorization, to confirm the existence of law enforcement records or information about another person is considered an

unwarranted invasion of personal privacy. Such records would be exempt from disclosure pursuant to Exemptions (b)(6) and/or (b)(7)(C) of the Freedom of Information Act (FOIA), Title 5 U.S.C. Section 552." Id.

On October 10, 2004, plaintiff appealed the DEA's decision to Office of Information and Privacy ("OIP"). See (Plaintiff's Compl. p 2, Exh. C)  On August 4, 2005, OIP informed plaintiff that the DEA conducted a search for records pertaining to Ming and located records responsive to his request.  See (Plaintiff's Compl. p 2, Exh. D)  Nevertheless, without Ming's consent, proof of his death, or an overriding public interest, the OIP determined that the records were exempted from disclosure under the Freedom of Information Act pursuant to 5 U.S.C. § 552(b)(7)(C).  Id.

On November 25, 2005, plaintiff filed a Civil Action against the DEA for failure to release the requested records.  On March 7, 2006, plaintiff was served with a copy of the defendant's motion for summary judgment.

## II.  STANDARD OF REVIEW

Summary of judgment is appropriate only if the pleadings, affidavits or declaration "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  In resolving the summary judgment motion, all evidence and the inferences to be drawn from it must be considered in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986).  Mere allegations in the pleadings, however, can not defect a summary judgment, the non-moving party must come forward with specific facts showing there is a genuine issue for trial.  Colotex Corp v. Catrett, 477 U.S. 317, 327 (1986).

In a FOIA case, summary judgment can be granted for an agency based

2

only on agency affidavits "if the described the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981) It's DEA's burden to justify the withholding of requested documents. Department of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 755 (1989). In determining whether summary judgment in a PA/FOIA case is appropriate, this court must conduct a de novo review of the record. 5 U.S.C. § 552(a)(4)(B).

## III.  ARGUMENT

**A.  Defendant is not entitled to Summary Judgment because the Plaintiff has raised genuine issues of material fact that the Defendant improperly applied exemptions (b)(6) and (b)(7)(C)**

1. Exemption (b)(6) and (7)(C) were improperly asserted.

Under FOIA Exemption (b)(6), an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Similarly, Exemption 7(C) authorizes withholding of records regarding a private individual's files unless, "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity," and that the information sought "is necessary in order to confirm or refute that evidence." Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C. Cir. 1992).

Plaintiff argues that the withholding of information on government informant, Steven F. Ming was improper, because his privacy interest against the disclosure of such information, is outweighed by the public interest in shedding light on the DEA's illegal activities. The U.S. Supreme Court has held that, where there is an interest in privacy of an individual mentioned and

3

"the public interest being asserted is to show that responsible officials acted negligently or otherwise improperly in the performance of their duties, the requester must, establish more than a bare suspicion in order to obtain disclosure. Rather, the requester must produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." National Archives v. Favish, 541 U.S. 157, 174 (2004).

In the present case, the plaintiff seeks for information to confirm DEA Special Agent Brain McLaurin's misconduct in relation to Steven F. Ming and others. Plaintiff has obtained and provided this court with compelling evidence, where Agent McLaurin has utilized Ming along with other government informants to commit perjury and/or fabricate evidence against criminal defendants.

Agent McLaurin Encourages Government Informants to Testify False

Against Individuals They don't know.

First, plaintiff has presented an affidavit from Anthony P. Riley, a former informant of Agent McLaurin's, which clearly shllws impropriety on the part of McLaurin. Mr. Riley specifically stated that Agent McLaurin allowed government informants to testify against criminal defendants, whom they don't even know. See (Plaintiff's Affidavit, p 4¶10, Exhibit 11)  In the case of USA v. Fenelon, Ming was among one of the informants, who testified against Fenelon without knowing him. See (Plaintiff's Affidavit, p 4-5, Exhibit 12)  Usually, before the informant testify, Agent McLaurin will show the informant a picture of the target defendant for in court identification. See (Id. Exhibit 12, pp 6,17) Agent McLaurin will then coach the informant on how to identify the defendant in court. (Id.)  In USA v. Manning, government informant, Mr. Riley testified that Agent McLaurin showed him a picture of the Manning brothers before his testimony at trial. See (Plaintiff's Affidavit, p 6¶D, Exhibit 19, p 65-66)  Even

4

after being shown a picture of the brothers, Mr. Riley was unable to identify the brothers as his alleged drug customers for 4-years. (Exhibit 19, p 67).

Second, in plaintiff's case, Agent Mclaurin purported Mr. Riley, Erric Washington and Thomas E. Lewis to be co-conspirators in the alleged drug conspiracy against plaintiff. See (Plaintiff's Affidavit, p 5, Exhibit 13) In order to build a case against plaintiff, Agent McLaurin had Mr. Riley placed in the same Pod with him. (Plaintiff's Affidavit, p 5) Agent McLaurin also fabricated investigative reports implicating plaintiff in the case against Thomas Lewis, King Smith, Eric Jones, Calvin Johnson and Dexter L. Dickens. See (Plaintiff's Affidavit, p 6¶C) As a result of that, the drugs that were collected and tested in USA v. Dexter Dickens' case, were introduced by DEA Chemist, Juan C. Bruna in plaintiff's trial. (Id.).

Aside from Mr. Riley, two other government informants, Ronnell McKinney and Erric Washington also stated that Agent McLaurin allow and encourage government informants to testify against individuals they don't know. See (Plaintiff's Affidavit, p 7¶E)

Agent McLaurin provides Government Informant with Conjugal Visit

Agent McLaurin is known to provide government informants with incentives to testify falsely against criminal defendants. In one particular case, Agent McLaurin procured Mr. McKinney's cooperation by allowing him to have sex with his wife. See (Plaintiff's Affidavit, p 7¶11-A). This was not one isolated incident. Mr. Riley was given several opportunities to have with his wife, also. See (Exhibit 11, ¶3) Agent McLaurin has gone far as taking government informant, Thomas Lewis to see his girlfriend at her house, while Mr. Lewis was in the Bay County Jail on writ from a federal prison. See (Plaintiff's Affidavit, Exhibit 20 ¶1-2).

The evidence presented in this case demonstrates an urgency for the public to know what their government has been up to. The evidences shlws

5

that, Agent McLaurin has negliglected his duties, violating agency procedure or law pursuant to the DEA Agent Manual, as an informant handler. The information uncovered by plaintiff during his investigation is compelling, revealing instances where government informants testify against criminal defendants unknown to them, and informants who is working to stay out of jail is rewarded with a downward departure in his sentence along with conjugal visits. Clearly, the withholding of Ming's information was improper, because such information is necessary to confirm plaintiff's allegations. On top of that, there has been an ongoing investigation into Agent McLaurin's misconduct by the OIP. See (Plaintiff's Affidavit, p 7, Exhibit 22)

Accordingly, the public interest outweighs Ming's and other informants' privacy interest who are involved in the misconduct, and information that confirms their misconduct were improperly withhold from disclosure pursuant Exemptions (b)(6) or 7(C).

### Ming's Records was Made Public and Maintained in Public Domain

The Defendant may not rely on Exemption 7(c) to justify withholding information that is already in the "public domain." Cotton v. Reno, 193 F.3d 550, 554-55 (D.C. Cir. 1999); Fitzgibbon v. CIA, 911 F.2d 755, 765-66 (D.C. Cir. 1990). A party can gain access to information withheld by an agency under a FIOA exemption if it can "point to specific information identical to that being withheld." Davis, 968 F.2d at 1280. Plaintiff can "point to specific information in the public domian that appears to duplicate that being withheld." Ashar v. Department of State, 702 F.2d 1125, 1130 (D.C. Cir. 1983).

In this instance case, plaintiff points specifically to record where Agent McLaurin has intervened on Ming's behalf inorder to avoid punishment. See (Plaintiff's Affidavit, p 3¶D) Plaintiff has also obtained portions of Ming's criminal history. Accordingly, the Defendant should be ordered to release any other information concerning McLaurin's intervention on Ming's behalf and Ming's criminal history.

6

## IV.  CONCLUSION

WHEREFORE, plaintiff request that the defendant's Motion for Summary Judgment be denied, and that the defendant is ordered to release the withheld information.


Dated: _____5-18-06_____

Respectfully submitted,

_____
Carlos Deglace, pro se
Reg.No. 04228-017/Unit B3
Federal Correctional Complex
Coleman (low)
P.O. Box 1031
Coleman, Florida 33521


## CERTIFICATE OF SERVICE

I **CERTIFY** that a correct and complete copy of the foregoing Motion in Opposition to Defendant's Summary Judgment was deposited in the prison legal mail box on this day _18_ May of 2006, and sent to:

Peter D. Blumberg
Assistant United States Attorney
United States Attorney's Office, Civil Division
555 4th St., N.W.
Washington, D.C. 20530

_____
Carlos Deglace, pro se