UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

CARLOS DEGLACE,
    Plaintiff,

v.                                    Civil Action No. 05-2276(CKK)

DRUG ENFORCEMENT
ADMINISTRATION,
    Defendant.
_____/

## AFFIDAVIT OF CARLOS DEGLACE

    I, Carlos Deglace, states under the penalty of perjury pursuant to 28 U.S.C. § 1746, that the following statements set forth herein are true and correct based on my personal knowledge or based on the information acquired by me through investigation.

    1. I am a federal prison, who is currently incarcerated at FCC Coleman (low), P.O. Box 1031, Coleman, Florida 33521.

    2. In May 28, 1998, I was convicted in a jury trial for conspiracy to possess with the intent to distribute cocaine base, in the Northern District of Florida, Panama City Division. See (United States v. Deglace, Case No. 5:98CR08/LAC (N.Fla. Dist. 1998).

**PLAINTIFF'S INVESTIGATION OF GOVERNMENT INFORMANT, STEVEN F. MING**

    3. In 1998 through 2004, during my investigation, I discovered that on the day of my arrest, Steven F. Ming ("Ming") denied any involvement in my case; nevertheless, he negotiated the release of his girlfriend, Rochelle House with law enforcement on my account. See (Exhibit 1, DEA Special Agent Brian McLaurin's March 27, 1998 Report of Investigation, ¶ 3)  Consequently, I was charged in the States of Florida for trafficking in cocaine while Ming walked free. See (State of Florida v. Deglace, Case No. 98-009247 (14th Cir. Fla. 1998)  Thereafter, in a federal complaint, Agent McLaurin purported Ming to be a confidential informant, who allegedly conducted drug transaction with me.

See (Exhibit 2, Criminal Federal Complaint)  Ming was eventually indicted on unrelated drug charges and entered into a plea and cooperation agreement with the government in return for a sentence reduction.  See (Exhibit 3, USA v. Ming, Case No. 5:98CR15/LAC (N.Fla. Dist. 1998), Ming's 5k1.1 motion).

**4. Agent McLaurin has always entervened on Ming's behalf to avoid criminal prosecution or punishment.**

A.  Agent McLaurin has known Ming since 1987, when Ming caught his first federal case.  See (Exhibit 4, USA v. Manning, Case No. 5:99CR4/LAC (N.Fla. Dist. 1999), Ming's Testimony, pp 201-202)  In December 17, 1987, Ming was convicted of possession with intent to distribute cocaine base and sentenced to a term of 84 months in the Bureau of Prison.  See (Exhibit 5A, USA v. Ming, Case No. 87-05037-02/RV (N.Fla. Dist. 1987), Ming's Criminal History).

B.  In July 27, 1992, within a year of his release, Ming plea guilty to possession of a control substance which resulted in a withheld of adjudication.  See (Exhibit 5B, State of Florida v. Ming, Case No. 92-00253-CFA (14th Cir. Fla. 1992), Ming's Criminal History)  Then, in August 31, 1992, Ming plead guilty to a cocaine sell charge which resulted in a suspended sentence.  See (Exhibit 5C, Ming's Criminal History).

C.  In February 23, 1994, Ming was arrested by the Panama City Police for possession of crack cocaine with intent to sell or deliver, battery upon a law enforcement, and resisting officer without violence.  See (Exhibit 6, State of Florida v. Ming, Case No. 94-331, 94-333 (14th Cir. Fla. 1994)  On September 21, 1994, as part of Ming's plea agreement, the judge suspended Ming's sentences, of 15 years for case No. 94-331 and four and a half for Case No. 92-1679, upon completion of a one-year community control followed by years of probation.  See (Exhibit 7, Ming's Sentencing Hearing, pp 3-5)  The judge also

advised Ming to stay away from known drug areas, particularly the Safari Lounge including the premises and parking lot areas. (Id. pp 5-6)

D. In March 21, 1996, Ming was found in possession of crack cocaine by officer Christopher T. Pate of the Panama City Police. See (Exhibit 8, State of Florida v. Ming, Case No. 96-1093 (14th Cir. Fla. 1996), Officer Pate's Arrest Affidavit) Ming was not arrested for the crack cocaine charge until April 1996. On July 23, 1996, Agent McLaurin appeared at Ming's plea hearing to delay his sentence, while Ming continue his cooperation with the DEA and other law enforcements. See (Exhibit 9, Ming's Sentencing Hearing, p 3) On August 21, 1996, at Ming's sentencing, Agent McLaurin appeared before judge Dedee S. Costello to inform her that:

> "[Ming] has testified before a U.S. Grand Jury against three significant targets..." (Id. at pp 4-5)

As the result of Ming's cooperation with law enforcement, the judge terminated his probation for Case No. 92-1679 and 94-331, no restitution payments, and sentenced him to serve 12.9 months in the Department of Corrections for the 96 case. (Id. at pp 14-16).

E. In August 21 1997, Ming was released from state prison. Eight months later, in May 5, 1998, Ming was indicted for two consecutive drug sales. See (USA v. Ming, Case No. 5:98cr15/LAC (N.Fla. Dist. 1998) Ming was never taken into custody; instead, he was released out on bond until he was called to testify against me. See (Exhibit 10, Ming's Detention Hearing, pp 4-6).

**PLAINTIFF'S FREEDOM OF INFORMATION REQUEST PERTAINING TO MING**

5. By letter, on August 8, 2004, the plaintiff requested "access to or copies of any and all documents pertaining to DEA informant, Steven Francis Ming." (Plaintiff's Comp. p 2) Plaintiff specifically requested for Ming's criminal history; (2) record of arrests; (3) pending criminal cases involving

Ming; (4) all cases where Ming has testified under oath; (5) all instances where the DEA has intervened on Ming's behalf; and (6) all administrative sanctions imposed on Ming by the DEA. (Id.)

6. By letter dated August 20, 2004, DEA acknowledged the receipt of the plaintiff's request but decline to process the request further. (Plaintiff's Comp. p 2) Because plaintiff submitted neither a notarized privacy waiver from Mr. Ming nor proof of his death, the DEA claimed that FOIA Exemptions (b)(6) and (b)(7)(C) protected such information from disclosure. (Id.).

7. On October 10, 2004, by letter, plaintiff appealed the DEA's decision not to release the information. See (Plaintiff's Comp. p 2).

8. On August 4, 2005, the DEA's response was upheld on administrative appeal based on, that the release of the information may cause an unwarranted invasion of the personal privacy of third party. (Id.)

9. The privacy interest of a third party is outweighed by the public interest when disclosure of the third party's information would shed light on the agency's wrongdoings. DEA Agent McLaurin has shown a pattern of utilizing government informants or witnessess to convict innocent individuals.

10. I have obtained an affidavit of Anthony Paul Riley, a former government informant, stating that Agent McLaurin **"allows [government informants] to be on others paper work in order to testify against them rather they know the person or not."** See (Exhibit 11, Anthony Riley's Affidavit, ¶ 5, the original affidavit is filed in USA v. St. George, Case No. 5:98cr8/LAC (N.Fla. Dist. 1998), Docket No.344)

A. In April 28, 1997, at the trial of Ronald Fenelon, Agent McLaurin presented testimony from government informants, Steven F. Ming, Thomas E. Lewis ("Tom Cat") and Kirk Howard against Mr. Fenelon. See (Exhibit 12, USA v. Fenelon, Case No. 5:96cr27/LAC (N.Fla. Dist. 1996) On July 19, 1999,

4

during a hearing on motion for new trial, defense witness, Robert Curtis Johnson testified that Mr. Howard told him that Howard didn't know Fenelon, "but he was trying to get back some of" his life sentence. See (Exhibit 12, Fenelon's Hearing on Motion for New Trial, pp 6,17) Mr. Howard also told Johnson that "Mr. Brian McLaurin showed him some pictures." (Id.) Mr Howard "said Mr. Brian McLaurin told him when you go into the courtroom just point to [Fenelon]." (Id. at pp 6-7) According to Mr. Johnson, Tom-Cat also didn't know Fenelon, but he was trying to get his time cut as well. (Id. at pp 8, 18) Another defense witness, Johnny Lee Morrison corroborated Mr. Johnson's testimony. (Id. at pp 24-26) Mr. Morrison testified that Mr. Howard told him that a person doesn't have to know a defendant to testify against him, because "that's the way the fed operate." (Id. at pp 28-29) Mr. Fenelon testified that Mr. Howard "personally told [him] that he does not know [him]." (Id. at p 39) Mr. Fenelon also stated that Mr. Howard, Tom-Cat and Mr. Ming lied at his trial, and that he has the paperwork to prove it. (Id.) In June 17, 2002, Mr. Fenelon was finally vacated of all criminal charges, the government had moved for dismissal of the indictment against him. See (USA v. Fenelon, Case No. 5:96cr27/LAC (N.Fla. Dist. 1996), Docket No. 185-186).

B. In May 1998, Agent McLaurin listed Mr. Riley along with Mr. Lewis and Erric Washington as co-conspirators in my case, although they were not acquainted with me. At the grand jury, Agent McLaurin claimed that Mr. Lewis and Mr. Washington "had been buying multi quantities, multi ounce quantities of crack cocaine from [my codefendant] Dan Simmons..." See (Exhibit 13, Grand Jury Trans, p 6) He also claimed that Lewis and Washington described Codefendant Kelsin Rolle as the person, who would always be with Simmons, when Simmons delivered the cocaine. (Id.) During pretrial, under the instructions of Agent McLaurin, government informant, Anthony P. Riley was

implanted in Pod 4-B with me, at the Bay County Jail, Panama City, Florida. Likewise, Larry Washington (Erric's brother) was placed in Pod 3-A with Codefendant Marcnel St. George. Larry had worked for Agent McLaurin as an informant in the case against Michael Montalvo. See (USA v. Montalvo, Case No. 5:98cr00006/LAC (N.Fla. 1998) Both Larry and Anthony were placed in those Pods to familiarize themselves with myself and St. George's case. The matter was eventually brought to my trial counsel, Richard Smith's attention. As a result of that, the government was forced to withdraw Erric and Anthony as co-conspirators.

C. Agent McLaurin also included my name with individuals, Thomas Lewis, King Smith, Eric Jones, Calvin Johnson and Dexter Dickens, whoes case had nothing to do with me. See (Exhibit 14 and 15, Request For Extamination of Physical Evidence) In 1998, Agent McLaurin conveniently inserted my codefendant, Dan Simmons onto his report of evidence submitted for fingerprint anaylsis under Dexter L. Dickens' file no. See (Exhibit 16, 1998 Request For Examination of Physical Evidence) He also included my name on his report of drug collected in Case File No. GT-97-0006. See (Exhibit 17, Agent McLaurin's Report) DEA Chemist, Juan C. Bruna testified at my trial, summarizing his report of the drugs collected from Mr. Dickens' case. See (Exhibit 18, Bruna's Summary of Testimony in United States v. Dexter L. Dickens).

D. In May 17, 1999, Mr. Riley himself testified against two brothers, Phynerrian (Nary) and Richardo (Spunk) Manning, who he didn't know. See (Exhibit 19, USA v. Manning, Case No. 5:99cr4/LAC (N.Fla. 1999) Prior to his testimony, Mr. Riley was shown a single picture of the brothers for in court identification. (Id., Riley's Trial Testimony, p 65-66) At trial, Mr. Riley could not distinguish the brothers to identify them; instead, he asked, "[c]an [he] have a minute to think, please?" (Id. at p 67) The jury found

both Mr. Ming and Mr. Riley not credible and acquitted the Manning bothers of conspiring with the government witnesses.

E. In October 2001, two years after the Manning brothers' trial, Agent McLaurin had a host of government informants, Steven Ming, Thomas Lewis, Erric Washington, Larry Washington and Ronnell McKinney to testify against Defendant Vincent Smith. See ( USA v. Smith, Case No. 5:00cr21-SPM (N.Fla. 2001) While at the Tallahassee Federal Detention Center in Florida, waiting for Smith's trial, some of the government informants spoke with another inmate, Richard Bolden. See (Exhibit 20, Richard Bolden's Affidavit, the original affidavit is filed under Smith's case docket no.160) Mr. Bolden was informed by Mr. Mckinney and Erric that Agent McLaurin "did not care if [they] knew [Smith] or not," inorder to testify against him. (Id. at ¶ 5-6)

**11. Agent McLaurin is also known to entice government informants with unauthorize special favors in order to procure their cooperation.**

A. In his sworn affidavit, Mr. Riley stated that Agent McLaurin had allowed him several special visits with his ex-wife and child in the DEA's office. See (Exhibit 11, Riley's Affidavit, ¶ 3) He also stated that Agent McLaurin gave him enough time alone with his wife to have sex, but he choose not to. (Id.) Mr. Riley further stated that government informant:

> "Ronnell McKinney told [him] that Agent McLaurin allowed [McKinney] to have sex in his office serval times and his wife eventually got pregnant. " (Id. at ¶ 7)

Mckinney's wife reported the matter to the H.R.S. which triggered an investigation against Agent McLaurin. (Id.) At Smith's Trial, Mr. McKinney testified that he was allowed to have a contact visit with his wife by Agent McLaurin during his debriefing. See (Exhibit 21, USA v. Smith, Case No. 5:00cr21-SPM, McKinney's Trial Testimony, pp 591-594).

12. In 2003, upon filing a complaint against Agent McLaurin because of his misconduct in my case, the Office of Professional Responsibility (OPR) begin their investigation. See (Exhibit 22, OPR's response letter)

13. In this case, the interest of the public to be informed about what their government is up to, outweights the privacy of those individuals who are involved. The information would indeed shed a light on the DEA's illegal uses of government informants during an investigation of its citizen. Thus, disclosure of the requested information would not be an unwarranted invasion of Steven Ming's personal privacy, who was involved in wrongdoing.

14. I, Carlos Deglace reiterate that the above statements are true and correct either based on my personal knowledge or based on the information acquired by me through my investigation.

Date: 5-18-09

Carlos Deglace, pro-se
Reg.No. 04428-017/Unit B-3
Federal Correctiona Complex
Coleman (low)
P.O. Box 1031
Coleman, Florida 33521